Good morning, Your Honor. Maliha Haq on behalf of the petitioner, Harbhajan Singh, and I have at my table Kartikey Pradhan, my co-counsel, and our assistant, Dilip Burdi. And I would like to reserve two minutes of my time. Manage your own time, but I'll try to remind you. You better start the clock. The issue that brings this case before the court today is whether the agency has substantial evidence to find that petitioner's asylum application was actually committed a serious nonpolitical crime as a soldier in the Indian Army during the Indian-Pakistan War of 1971. Before discussing the merits of whether this bar applies, I think it's worthwhile to discuss the procedural posture in which this case comes before the court today. This is the second time this case is before the court. The first time this course remand directed – petitioner estimates that this course remand directed the agency to find or to develop the record further on whether the persecutor bar applies to him and whether he is barred because he persecuted the POWs and the Bangladeshi civilians based on a protected ground. However, that – the purpose of that remand was not at all addressed by either the IJ or the board. The IJ – they got back to the IJ, and the IJ found out they're in the right church but the wrong pew and changed the basis. And that was affirmed by the BIA. That's correct, Your Honor. Do you find – and then, as you say, there's an issue of substantial evidence for that. Do you quarrel at all with the change that took place? Yes, Your Honor, because now we don't have a decision from the agency about whether the persecutor bar applies in this case. We just don't know whether that bar is applicable. They just changed gears. And in fact, we do think we have to assume it doesn't apply, I guess. Right. Because they've now found it's nonpolitical. Yes, Your Honor. So – So where are we? Okay. So where we are, Your Honor, is – excuse me. I mean, we – I – I mean, just to interrupt for a second, I mean, you seem to be arguing we ought to remand for them to conduct the tasks that we set them to originally. Yes, Your Honor. But they've gone off in a different direction. So either I think you've got to argue they went beyond – they can't do that because it's beyond the scope of the remand or something new. Is that your argument? Yes, Your Honor. I mean – So – but you didn't raise that in front of the agency. So where does that leave us? Yes, Your Honor. I would just submit that the court has the jurisdiction to decide whether its own remand order was followed. And I would just submit that, you know, this Court should at least – I mean, that now at least the agency erred by going beyond the scope of the remand and that they should at least address the Court's first remand. But how do you get around the non-exhaustion of the issue? I mean, our law is pretty clear that unless you bring it up before the BIA, we don't look at it here. What case would you rely on that we can overlook that? Your Honor, I don't have a case for it, but I would just – I mean, I just submit that – that, you know, this Court has the jurisdiction to decide whether it has jurisdiction. And so I would just say that this Court has a jurisdiction to decide whether its own remand was followed. And how would you argue that this was a jurisdictional question? Well, Your Honor, I mean, the fact that I'm before the Court today just to – I mean, we have to see whether the Court's remand was followed the first time. Well, we haven't always been as tight on – on these issues as perhaps we have when we send them to district court. But how would you – how would you distinguish our Aschutti case, opinion by Judge Rawlinson for our Court? On remand, a court is free to – as to anything not foreclosed by the mandate. And under certain circumstances, an order issued after remand may deviate from the mandate if it is not contrary to the spirit of the circuit court's decision. Well, Your Honor, I would submit that the remand order was specific because it was addressing the issue of whether there was a nexus between what Petitioner did and his – what Petitioner did and whether that was on account of a protected bar. See, if we agree with you, the BIA is going to go down and just bring your person back before another IJ. They're going to go back before the BIA, and we're going to be back here again, which is – is duplicative, and we've got the whole issue before us now. Yes, Your Honor. So they – we're talking about redoing the whole thing when we have a record now and an analysis of both the IJ and the BIA as to a ground that makes more sense than the original ground. Well, yes, Your Honor. I would – well, my argument today is that this particular ground, in fact, does not make more sense than the original ground. And the reason – Oh, well, tell us about that. Yes, please. Why isn't there substantial evidence? Well, I would submit, Your Honor, that the reason why it doesn't is because the Congress's intent in this case was to – you know, as pointed out in McMillan, was to make sure that people who are undesirable under the law, which is what the language of the case says, stay out of the U.S. And the way this bar has been applied historically by this Court and by other courts, other circuits, is against criminals, against people who have committed murder and, you know, extortion, mayhem, vast destruction of property. Respondent – I mean – sorry, excuse me. Petitioner here is – was a soldier in the Indian Army. And he – there are two incidents at issue, the first one being his conduct towards Bangladeshi civilians who were rounded up in anticipation of hostilities. And there his – his particular conduct was that he, you know, helped round them up and questioned three or four of them in the period of five minutes and hit them with a bamboo stick. But there are 34 of them. There were women and children who were rounded up. Yes, Your Honor. Only the men were damaged because they didn't give the answers they wanted. But you're saying that that isn't a serious or a substantial nonpolitical crime? Well, Your Honor, I would argue that the political element of that outweighs any criminal nature of that act. Political in what way? Your Honor, he was a soldier in the Indian Army. And the Army's goal was to win the war in anticipation of hostilities. So I would – The war hadn't started. Yes, Your Honor. And the war hadn't started, and so – but they were scoping out the terrain of the hostilities. And he has testified that his commander told him we have to attack here, go and find out about the terrain. And so he was following orders of the Indian Army to find out – Excuse him. Your Honor, it's not admirable behavior. However, I would submit that the political goal outweighs the criminal nature, especially it was not – especially the fact that it was not grotesque or barbarous, you know, which is what the standard is. How about the other one, when the war was over and the soldiers were rounded up? Yes, Your Honor. And they were beaten with rifle butts, some of them requiring medical attention, all because of no reason at all except that you guys were bad to us and we're going to be bad to you, even though the war is over. Yes, Your Honor. I mean, I would submit that – I would submit that the record is actually not clear on whether the war was over. I know he testified that hostilities had finished, but he had also testified that this occurred in September of 1971. And the war actually didn't end until December of 1971. So it's a little bit – the record is unclear about whether the hostilities had, in fact, ended. And even if they had not ended, even if – sorry, excuse me. Even if they had ended, I would just submit that his conduct was supervisory. He never hit any of the men. And also he – the political goal there was to find out, you know, why this conduct occurred with the mutilation of their fellow soldiers and perhaps to find out – It's retaliation for what happened. Well – War is – war is hell, they say. What we have before us, whether there was substantial evidence before the board that they could make the determination, you're arguing there's no substantial evidence? Your Honor, I would submit that no reasonable fact finder can find that a soldier such that he has to be barred from – barred from asylum. And, I mean, especially when his acts were not barbarous or atrocious in relation to the political goal which he had. I would just like to reserve the rest of my time. Certainly. Thank you. We're from the government. Good morning, Your Honors. The government's position is that substantial evidence does support the immigration judge's finding as affirmed by the board that the petitioner is barred from asylum and withholding removal due to his commission of serious non-political crimes. I'm puzzled about what happened after we last had this case before us, because the government argued there, this is a serious political crime, and said, look, this is, we were not persuaded, so we sent it back, and now there's an entirely different theory, and the government is saying, no, it's non-political. How do we reconcile that? I'm not sure you have to reconcile it exactly, Your Honor. I agree it was a bit of a surprise, and if you look through the administrative record, you'll see that the government attorney was a little bit surprised that the immigration judge said, I think maybe this is a serious non-political crime case. So this theory basically got interjected by the I.J., right? That's correct. On remand. And the I.J. didn't do what we kind of expected him or her, I don't know which one, to do, which was to develop the record on the issue of whether it's, it was political in nature or not. I agree. It was probably an unanticipated result by many parties in this case. So refresh me. When was, and this was the first time that the Petitioner was given notice of this theory? Well, I don't think you, yes. No, I mean, because you have to give people notice and an opportunity to build their case. You can't surprise them at the hearing with an entirely new theory. And that seems to be what happened. Didn't the I.J. ask for briefing on the issue before the I.J. made the decision and both sides submitted briefs on this issue? That's correct, Your Honor. The immigration judge certainly did give both parties fair warning and asked for briefing. There were two hearings, so there was plenty of notice. But the government attorney But was there an objection made by either side? There was no objection made by either side. I think both sides were in favor of briefing and, in fact, did brief the issue. But there was no complaint. A bar is a bar. Before I get into that, just a procedural question. Now, this case, as I recall, came as a result of an asylum application, not as to a notice, initial notice to appear, right? This was referred by an asylum officer. That's correct. So do we have a charging document? We don't have one per se in this case. I think that's correct, Your Honor. We sent it back to the board saying develop the record. And they don't develop the record. They produce a new theory. So have they complied with our mandate? I think they have, Your Honor. How have they? Did they develop the record? They developed the record with regard to a new bar. No, they didn't. There's nothing new in the record. Oh, there was further testimony with regard to the application of the bar, the serious nonpolitical crime bar. What was the testimony? Well, they took further testimony with regard to the bar. What was the testimony? I think most of the testimony actually went to the merits of the asylum. Who testified? Who testified? The Petitioner, I believe, was further questioned. Do you believe? Do you know the record?  Yes. The Petitioner further testified as to questions regarding asylum and withholding removal. Can I see the record? Sure. Pardon me. So Mr. Singh was sworn again on June 25th.  He was sworn again on June 25th, 2007, beginning on page 98 of the record. And then he testifies further with regard, admittedly, more to the merits of the asylum claim than to the bar. Correct me if I'm wrong, but if I recall his testimony, he just testified about his asylum application. Is that right? Yes, I believe that's correct, Your Honor. And then on cross-examination, the government asked him about the new theory. Is that right? Or develop the facts underlying that? I believe that is correct, Your Honor. Okay. Let me ask you, I guess, a more of a broader question about this. It seems to me that the Petitioner is sort of caught in a catch-22, if you believe the government. Either it's a political crime and he's barred on the persecutor or it's a nonpolitical crime and he's barred. So in the theory of this, where's the middle ground where there's no – where there actually – the bar doesn't apply? How would you articulate the difference in situations like this? The difference between a persecutor bar and a serious nonpolitical crime bar? Right. There's probably some overlap in some cases. I guess the main difference is for a persecutor bar, you have to show that the motivation for the persecution is on account of a protected ground, which might be a political ground, for example. For a serious nonpolitical crime, perhaps the context is a little broader, not the specific motivation. I mean, we're not talking about persecution. We're talking about a crime. It has to be nonpolitical. So, I mean, it just seems to me that someone in a petitioner situation or similar situations is just caught in a catch-22. It doesn't make any difference as far as which bar applies, does it? I mean, from the government's perspective. I'm not sure I understand the question entirely. Are you talking about somebody in a war situation? No, we started off in this case debating whether it was political or not. And the government said, it's political, it's political, it's political. And now the IJ said, well, it might be nonpolitical. And the government says, okay, it's nonpolitical. And the bar still applies. So it seems to me that under the government's theory, it doesn't make any difference. Motivation makes no difference at all. Is that true? I don't think that's exactly accurate. I don't even think the government would go so far as to say it's entirely not connected to politics whatsoever. As this panel minus one judge wisely stated before, I think war often has a political component. So the government isn't saying it's not political in nature at all. It's saying that with the case regarding the Bangladeshi citizens, in that case, the government is saying, while there could be a political motive in questioning them, the harm that was committed outweighs that political objective. And in the case of the POWs, we're saying it just wasn't political, maybe in a larger war political context, but the motivation there was clearly revenge or retaliation, which isn't political, and the war had ended anyway. I think the record is fairly clear. But, you know, the odd thing for me, and I haven't gone back to listen to the audio tape of the prior argument, but what I remember is the government vehemently arguing that it was political. And I just don't know what to make of the government's position when you take two different positions on the same set of facts. I think they're not entirely inconsistent. Why do you say the war had ended? I understand that there was a ceasefire. It does say ceasefire. I would have to look further in the record to use, I mean, to see if he actually used the word ended. I think counsel suggested it ended in December, and these events occurred in September. I have looked outside of the record and confirmed that it was a three-week war that ended in December, and he does seem to testify that both the beatings of the civilians and the POWs occurred in September of 1971. Okay. I think we have your argument in hand, but I don't want to deprive you of that. Let me ask a question just for my own. Here is a situation where we sent the case back because the record was incomplete. We get it back and the I.J. says, well, your problem is that you were looking at the wrong section. And so the I.J. does that. I'm just wondering, what's the responsibility of the government when a situation like that occurs? That is, do you petition for a reopening? In this case, it had been sent back to the I.J. The I.J. came and the board says, yes, there is substantial evidence of this, so it comes up to us. But at some point, there's been a modification of what is the charge that the government is going to stay with. And maybe there's no answer to it because of this very strange circumstance that took place where the I.J. took a relook at the facts and just made a different decision. But ordinarily, don't you ask for a reopening when the circumstance changes and something new is going to be charged? Yes, but the key there is the word charge. We certainly would if the charge was different. There's not a charge at issue here. It's a bar. And with regard to a bar, I think the circumstances are very different. You don't have to allege a bar and a notice to appear, for example. And I take it your argument is the only thing we really have before us is whether there's substantial evidence for a nonpolitical crime bar. That is the government's position, yes. And we submit that there is substantial evidence to support the serious nonpolitical bar. How would you answer the opposition's argument that this is more than just a new case? We only sent it back for one reason, and there's a jurisdictional component when we do this and that we don't have jurisdiction to change and go to another area of the law. What is your response to that? Well, that was an entirely new argument that I heard for the first time today. I don't even think that specific argument about jurisdiction was made in their brief, as I recall. No, no, we're asking. We're asking. We have to ask on jurisdiction is something that we sort of have to live by ourselves. We can raise it any time. And if we have a question about it, we'll give you an opportunity to respond to it. But does the government have a position at this juncture as to whether or not this is a jurisdictional issue? Yeah, I think it's clearly not a jurisdictional issue. Why is that? The remand was pretty broad, and you can apply a bar at any point in the proceedings. The proceedings were still ongoing. What's your best case for that? I can't think of a case off the top of my head. I apologize. Yeah, no, I think the thing that troubles me, and it cuts both ways, we remanded with one idea in mind, and that didn't happen. Now, Judge Wallace is quite correct. Often we remand on an open record. Sometimes we confine it, and we just have to look at our language. I think I knew what we intended. The language might not have said that. But the government took off through the IJ in a different direction. I guess we have to evaluate that. Now, the petition didn't complain about that, which fits into the analysis. I think that we could treat that issue as unexhausted. On the other hand, I think we do have inherent power to look at the scope of the remand and whether the agency complied with that. And I think that's what we have to look at. And I'm puzzled by the proceeding. I can't fault, of course, your agency. It came up from the IJ and not the government itself to initiate this. But it's a bit of a puzzle. Well, I think it's perhaps somewhat comforting that I don't think there's really a notice or due process issue here. No, I think I'm satisfied. I mean, the briefing and the fact that nobody objected, I think that's probably the case. It may have been a different case otherwise. And the fact that this was initially an asylum petition case, not a charge case. Correct. Let me ask one other question. I'm sort of doing the same thing my colleague, Judge Thomas, is. When we pick up one end of the stick, we pick up the other end. And when we get into jurisdiction, it gets a little complicated. Assume for the sake of argument that we conclude that we don't have jurisdiction to even consider this. And would the government still have the ability to go back to the IJ and file again, ab initio, and open the file and assert the bar as maybe they should have done initially? I really don't know, Your Honor. But as far as I'm informed, you can't go back and reopen for a bar. I mean, I'm not familiar with any case that does that. It's just different from a charge. Yeah, well, it's already been seen by the IJ, and the board approved it in its opinion that this is a bar. Now, if we say you can't say it's a bar under these facts, could the government petition for reopening so that they could assert the bar where we have jurisdiction? I would like to say yes. If you like supplemental briefing, it's a very novel issue that I haven't had the opportunity to give much thought to. Yeah, the more I talk about it, the more complicated it looks, and maybe I shouldn't have asked the question. I apologize that I don't have a better answer. The government has done that in some cases that I'm just recalling. For a bar? Yeah. It could be. Okay. All right. Thank you very much. Thank you. I'll give you two minutes for a bottle. Our questions may take you longer than that. Your Honor, I just wanted to point out that Petitioner's attorney before the IJ on remand did point out that, you know, what the scope of the remand is, and that, yes, it's true that the IJ, you know, that he didn't push the point. So you think he was asked before the IJ? Yes. But then he didn't raise that on appeal? It wasn't raised on appeal. And he didn't push the point, and it should have been pushed perhaps to make it a little bit more clear. But clearly it was raised before the IJ. And just as far as the issue of the two bars, I mean, I think Your Honor's questions were fair. I mean, when does the government, you know, when is this issue laid to rest? I mean, when – if – I mean, can the government then go back and reopen the persecutor bar, because there has been no final say from the agency on that particular issue, if this bar doesn't apply? So, I mean, where – I mean, where does that leave Petitioner? And so I would just submit, Your Honor, that neither bar has applied, that certainly this – there has been no, you know, the criminal nature or whatever criminal nature that his acts had certainly does not outweigh the political nature of the context and everything that was happening. And I would also submit that he – I mean, I know this particular issue now is not before the board, but before – sorry, before the Court. But the Court has already decided that there had – this record does not contain any evidence that he persecuted these POWs and the Bangladeshi civilians on account of their political opinion or next – or any other protected ground. So I would submit that neither bars apply, and we should remand for a grant of his application. Thank you both for your arguments. It's an interesting issue, and we appreciate you appearing here this morning because I think an oral argument was helpful to us. So thank you both. Thank you. The case will be submitted for decision. And if we need further briefing, we'll let you know. We'll be in recess. Thank you. All rise. Thank you.
judges: Wallace, Noonan, Thomas